## C. A. HOOPER CO. v. UNITED STATES.
### No. 3858.

District Court, W. D. Wisconsin.

Sept. 5, 1941.

G. Burgess Ela, of Madison, Wis. (Ela, Christianson & Ela, of Madison, Wis., of counsel), for plaintiff.

John J. Boyle, U. S. Atty., and Alvin M. Loverud, Asst. U. S. Atty., both of Madison, Wis., for defendant.

STONE, District Judge.

The plaintiff, C. A. Hooper Company, a Wisconsin corporation, seeks to recover compensation from the defendant, United States of America, for damages that it alleges it sustained by reason of the delay in the construction of the Veterans' Administration Hospital at Des Moines, Iowa, occasioned by the general contractor, H. G. Christman Company.

On June 18, 1932, plaintiff entered into a contract with the defendant whereby it agreed to furnish all work required for the complete installation in the Veterans' Administration Hospital at Des Moines, Iowa, of the "plumbing, heating, electrical work, and outside distribution system", for the sum of $226,010. The contract provided that plaintiff should commence work promptly after date of receipt of notice to proceed and that the work should be completed at a date not later than that provided in the contract for the general construction of the buildings, which had been awarded to H. G. Christman Company. As a result of the incorporation of the terms of the so-called "general construction contract" into the contract between plaintiff and the defendant, plaintiff was required to complete its work within two hundred fifty (250) days from receipt of notice to proceed, subject, however, to the right of the Government under the contract to make changes in the construction of the building; to interrupt the continuity of the work; and to extend the time to the general contractor for the completion of its contract, if the delays in the completion of the work were due to unavoidable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, acts of the Government, fires, strikes and unusually severe weather.

Pursuant to the terms of plaintiff's contract, its work was to be completed on March 22, 1933. The work was actually completed on June 22, 1933. Plaintiff's work could not proceed independently of the general construction work. During the months of August, November and December of 1932 and February of 1933 the H. G. Christman Company was delayed a total of twenty-eight (28) days because of severe weather, and six (6) days during November on account of a labor strike. Because of these delays, it was granted an extension of time by the Government of thirty-four (34) days. On February 28, 1933, the Government, pursuant to the terms of its contract with H. G. Christman Company, issued a written "change order", and granted additional time to the general contractor of six (6) days.

On February 24, 1933, the funds of the H. G. Christman Company, intended to be used by it in connection with its contract, were impounded when the bank in which the funds were deposited closed. This was shortly before the banks throughout the nation suspended business. On March 3, 1933, the H. G. Christman Company by letter notified the Government and the

surety on its bond that it was unable to resume performance of the work. Thereupon the Government, on March 7, 1933, terminated the right of the H. G. Christman Company to proceed with the work in accordance with Article Nine of the contract, by service of the required written notice on H. G. Christman Company and its surety. On March 10, 1933, the surety offered to complete the work. On March 14, 1933, the Government accepted the surety's offer and on March 27, 1933, authorized it to employ Kucharo Construction Company to complete the work. But, because of some misunderstanding between the surety and Kucharo Construction Company, this contract was cancelled on March 31, 1933. On April 11, 1933, the Government approved a contract with the Union Construction Company. The general construction work and the work of the plaintiff was completed on June 22, 1933.

From the time plaintiff commenced work and until the date work was completed, it kept its crew intact, and during the delay after February 24, 1933, it was advised by the Government from day to day that work on the buildings would be resumed. Its work on the Government building represented about one-third of the total work plaintiff performed during the year in question.

Plaintiff contends that because of the delay in the general construction work, it incurred substantial extra expense to the extent of the following items for each day of delay:

| | |
|---|---|
| 1 general superintendent | $12.14 |
| 1 electrical foreman | 10.72 |
| 1 plumbing foreman | 10.72 |
| 1 branch office clerk | 3.57 |
| General overhead | 25.00 |
| Idle equipment charge | 10.00 |
| Total | $72.15 |
| Less 10% for small amount of work carried on | 7.21 |
| Net loss for each day of delay | $64.94 |

That it was delayed in the performance of its contract by reason of the delay of the general construction work over a period of ninety-two (92) days, and suffered damage in the sum of $5,974.48.

The plaintiff's contract with the Government contains no provisions for compensating the plaintiff for damages that it may have sustained by reason of any delays in performance of its work caused by an extension of time granted the general contractor for the performance of its contract. The plaintiff bases its claim for damages against the Government solely upon an implied obligation of the Government to reimburse it for expenses that it is alleged to have suffered by reason of the delays occasioned by the general contractor in the construction of the building in that the general contractor was, during the life of its contract, an agent of the Government. There was no stipulation in plaintiff's contract which expressly exempted the Government from liability to plaintiff for delays caused by other contractors. Plaintiff makes no claim of any mistake on the part of the Government or that the Government was in any manner dilatory, unfair or unreasonable in granting an extension of time to the H. G. Christman Company for the performance of its work.

On February 24, 1933, when the general contractor notified the Government that it could not continue with the contract, it had, counting the forty days of excused delay, a total of sixty days to complete its work. At that time it had completed 82% of its contract. It had approximately 25% of contract time to complete 18% of the work. The H. G. Christman Company proceeded with due diligence until the Government terminated its right to continue with the work. The Government acted in good faith and proceeded with diligence in the completion of the contract. Under the extensions granted by the Government, the contract should have been completed on June 16, 1933. It was completed on June 22, 1933. The delay of which the plaintiff complains was due to unforeseeable causes beyond the control of the contractor or of the defendant. Under the provisions of the contract, plaintiff had no right to anticipate that the work of the general contractor would be completed in 250 days. The provisions in the contract for the extension of time and for excusing delay made the completion date fixed in the contract provisional only.

The Government has not failed to perform its contract with the plaintiff in any respect whatsoever. It at no time agreed with plaintiff to complete the general construction work within 250 days or any other specified time. The Government reserved the right, in its contracts with plaintiff and H. G. Christman Company, to make changes and to interrupt the con-

tinuity of the work of the construction of the building.

In the installation of the plumbing and electrical apparatus and equipment, the plaintiff agreed to work in conjunction with the other contractors, and assumed any risk of delays in the performance of the work by the general contractor. The Government was not responsible for any delays in the performance of the work, and acted within its rights in granting extensions of time to the general contractor. There was no mistake or bad faith on the part of the Government. It acted reasonably and with due regard to the rights of the contractors.

The case of H. E. Crook Company, Inc., v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438, is analogous to the instant case and controlling. In that case the plaintiff agreed to furnish and install heating systems in a Government building to be constructed by a general contractor. In denying plaintiff's claim for extra compensation, the Court said:

"It [the contract] allowed two hundred days from the date of delivering a copy to the plaintiff for the work to be completed. A copy was delivered on August 31, 1917, making March 19, 1918, the day for completion. But it was obvious on the face of the contract that this date was provisional. The Government reserved the right to make changes and to interrupt the stipulated continuity of the work. * * * The contract showed that the specific buildings referred to were in process of construction by contractors who might not keep up to time. * * *" The dates fixed for the completion of the general construction work were the same dates fixed for completing the heating systems, "but the heating apparatus had to conform to the structure, of course, so that if the general contractors were behindhand the heating also would be delayed. They were behindhand nearly a year. When such a situation was displayed by the contract, it was not to be expected that the Government should bind itself to a fixed time for the work to come to an end, and there is not a word in the instrument by which it did so * * *.

"The Government did fix the time very strictly for the contractor. It is contemplated that the contractor may be unknown, and he must satisfy the Government of his having the capital, experience, and ability to do the work. Much care is taken therefore to keep him up to the mark. Liquidated damages are fixed for his delays. But the only reference to delays on the Government side is in the agreement that if caused by its acts they will be regarded as unavoidable, which though probably inserted primarily for the contractor's benefit as a ground for extension of time, is not without a bearing on what the contract bound the Government to do. Delays by the building contractor were unavoidable from the point of view of both parties to the contract in suit. * * * It would be strange if it were bound for more in respect of matter presumably beyond its control. The contract price, it is said in another clause, shall cover all expenses of every nature connected with the work to be done. * * * The plaintiff's time was extended and it was paid the full contract price. In our opinion, it is entitled to nothing more."

As stated, the date for the completion of plaintiff's contract was provisional. Plaintiff's contract disclosed that the buildings were to be constructed by a contractor whose contract for the completion of the work might be extended by the Government for a number of reasons. Plaintiff, by its contract, agreed that delays due to strikes, severe weather, or any other cause beyond the control of the contractor should be unavoidable and excused. There is no evidence that any of the delays were avoidable or were not beyond the control of the general contractor.

Plaintiff must have known, when it signed the contract, of the possible delays, and it assumed the risk that delays might arise which would prevent it from completing its work within the 250 days. The defendant never agreed with the plaintiff to complete the general construction work within any specified time. It has not failed to perform its contract with plaintiff in any respect whatsoever. There is no provision in the written contract and no agreement implied by law that obligated the Government to carry on the general construction work so as to permit the plaintiff's work to be done within the 250-day period. Consequently the plaintiff has no valid claim against the Government for damages as alleged in its complaint.

Findings of fact and conclusions of law in accordance with this opinion will be filed, and the plaintiff's complaint dismissed without costs.